Our next case on the call the docket is agenda number seven case number one eleven seven nineteen people the state of Illinois versus Thomas S. Reinhart. Counsel for the appellant. Good morning. May it please the court, counsel. I'm Assistant Attorney General Catherine Saunders for the people. This case turns on the meaning of section five dash eight dash one D four of the code of corrections. And that language of course is ambiguous but I'm going to explain why it provides for an indeterminate three year to life MSR term. You look at the legislative history in response to concerns about increased recidivism and sex offenders and the attendant concerns about the safety of the communities and also about getting these sex offenders the sex offender specific treatment they needed. The 94th General Assembly passed this amendment to section five dash eight dash one to provide for extended MSR terms for the certain class of sex offenders. They have to serve an extended term. Public Act ninety four one sixty five also created a scheme for supervising for implementing this new extended MSR term. So under this scheme the Illinois Department of Corrections IDOC retains custody and supervises the offenders. And they supervise them in accordance with the terms that are set by the Prisoner Review Board, the PRB. So in addition to setting the MSR terms, the conditions of the MSR term, the PRB has attended duties of determining the time for discharge, imposing sanctions for violations and ultimately if necessary revoking the MSR. So under this scheme, under the amendments effected by the PRB, the supervising officer, essentially but formally been known as a parole officer, prepares a progress report every 180 days, so twice a year. And reports on the offender's compliance with the conditions of his MSR, including the offender's participation in progress in the sex offender treatment. And that report is submitted to the PRB. Ms. Saunders, just for clarification because I'm not sure about the process here. Okay. After a defendant has served the MSR term of three years, does the defendant have to apply to be released from an MSR? And what is the procedure after the initial three years? Certainly the offender may apply. The statute certainly provides the offender may apply for discharge. I don't know that necessarily it would have to. The discharge would have to be initiated by the defendant. In any other MSR term, all offenders can be released from MSR if the PRB determines that they can remain at liberty without committing another offense. But this specifically provides, yes, the amendments effected by Public Act 94-165 provide a procedure for the offender to apply for discharge. He has to have the recommendation from the supervising officer plus a report, an evaluation prepared within 130 days or 30 days, I'm sorry, from a sex offender evaluator who's been certified by the Sex Offender Management Board. It does speak to that. I'm not certain and I doubt that it would have to be solely initiated by the offender. Hasn't this court held that MSR is a form of punishment? Pardon me? Hasn't this court held that MSR is a form of punishment? It's part of the sentence, yes. I'm sorry? It's part of the sentence. The MSR is part of the sentence. So that's a function of the judiciary rather than of the executive branch, executive agency? MSR is always arisen by operation of law and it's always attached automatically such that it's not infrequent that circuit court sentencing judgments leave off, either inadvertently, purposely leave off that MSR term. And because it arises by law or attaches by operation of law, then the Illinois Department of Corrections simply calculates the offender's sentence to include the statutory term. So in that sense, what the Fourth District has done here and defendants' preferred interpretation here would require a departure from that current law and practice, requiring the judge to select an MSR term. Judges have never been called upon to select a particular MSR term from within a range. And the defendants' preferred interpretation of the statute here in the Fourth District's reading would require that departure from this customary practice. When does the defendant first become aware or should become aware that they might be subject to an extended MSR term? Certainly this Court's rules and precedent suggest that they used to be admonished at the time of sentencing. So this defendant here, for example, was admonished at sentencing that given then recent amendments to the statute, he was going to be required to serve an MSR term, an indefinite term of three to life, and that the judge himself didn't have to impose it, he said, but that the Department of Corrections would automatically add it to his When did he learn that he actually was going to have to do more than three years? Based on the transcript, he learned of that at sentencing. He learned it when? I'm sorry? When did he learn that? He was admonished at sentencing of the then recent amendments to the MSR statute. As I said, the Fourth District's construction of this, of section, subsection D4, departs from this established practice where MSR terms arise as a matter of law. And as the Second District aptly noted, a Second District decision in Schneider, the conflicting decision here, he said that only a court may impose an MSR term doesn't prevent a court from imposing an indefinite or an indeterminate term. And presumably in using this indeterminate language here, in specifying this new extended term MSR, that the General Assembly must have intended what it said, that these offenders are to serve indeterminate three to life MSR terms, extended terms, keyed to their progress in sex offender treatment. Defendant's brief also raises a new issue challenging the prosecutor's questioning of the veneer at Fort Deer. And I'd like to address that in my remaining time. Contends that prosecutors questioning whether the veneer members could think of any reason why a sex offender might not immediately report an assault. Before you get to that, could you indicate the statute is ambiguous and could be read either way. And then you rely on and cite some comment from a representative that says this House bill creates lifetime supervision for high risk offenders. Yes, Representative Gordon. Right. And then the defense says Senator Harmon in describing the bill says it permits courts to enact lifetime supervision for the highest risk offenders. That's a correct recitation. Okay. So how do we rely on legislative intent based upon those two comments as to what the statute means? I don't know that Senator Harmon's responses are that significantly different. He says it permits courts to enact lifetime supervision. I don't know that necessarily means what defendant says it means. It doesn't rule out that a I don't know that necessarily implies that a determinate term that a court must or a judge must select a determinate MSR term from within that three years to life range. And also if you look at the context of the Senator Harmon's statement as a whole, I'm not sure that he was choosing his words very precisely. If you look at the context, it says it permits courts to enact lifetime supervision for the highest risk sex offenders. Ladies and gentlemen, he introduces the bill, permits courts to enact a lifetime supervision for the highest risk sex offenders. I'm not of any where of opposition. In the interest of getting to the softball diamond, I'll be happy to answer any question. I'm suggesting only that in context of his remarks, and that was the sum total of his remarks, that perhaps he was choosing his words less than carefully. While I might agree that it's risky to base legislative intent on the comment of one representative or one Senator, my point is we have two completely, arguably two completely different understandings of what this section does. And if that's the case, does it fall to this court without discerning legislative intent what the policy is, and we're not policy makers? That's correct. This court's not a policy maker. Again, I don't think that these two statements of legislative intent brief, though they are necessarily conflict. And I think taking it back again, when you look at the context of the sum total of the amendments that were affected to various sections and subsections of the Code of Corrections, you can see that the legislature was intending to create this extended supervision for the highest provision term, and that they also amended other subsections to create this procedure to implement them, gave the PRB new powers, provided these 180-day reports, et cetera. So I don't think the court would be placed in the position that, yes, the court is not a legislative body, but the court's not being asked to do that here. I'm turning again to the defendant's question about voir dire, where the prosecutor asked for veneer persons, whether they could think of any reasons why a sexual assault victim might not immediately report. The defendant concedes that he's forfeited this issue because he failed to object at trial or raise the issue in a way that should enforce that forfeiture. In fact, this claim really fails at the threshold because it can't show that the prosecutor's questioning was clear and obvious error. It must be a clear and obvious error. I was going to ask the next question, however, where here the appellate court found that it was in fact error, but the evidence was not closely balanced, correct? Correct. They found that the question was error, although the appellate court did say that the prosecutor's question did not indoctrinate the jury. So it wasn't entirely clear to me what kind of error the appellate court found here. But, yes, they found it was error, the evidence was closely balanced, and it was not structural error. May I ask just a question or two about the facts in this case? Certainly. It's my understanding that this was the testimony of the complaint in the case. Was there any corroboration to her testimony? No. She was taken, he took her in a van, he had her alone, took her off on a side road off a familiar state route, parked in a deserted area, and he sexually assaulted her in the back of the van. There were no other witnesses. Did the defendant testify? He did not testify. So the theory of the defense was an attack on her credibility, is that right? Right. The theory of the defense was essentially she was a defendant, I'm sorry, the complainant did have some mental delays, shall we say, and so they tried to suggest that maybe she was not telling the truth, her veracity. And did they raise the issue of her failure to immediately report this event? Defendant, yes, and argued in closing that that's a reason to find the defendant not guilty of this crime. So the voir dire question related directly to the theory of the defense? They were directed, no, I would disagree with that. The voir dire questions were directed to determine whether potential jurors would be biased against the complainant. And hold it against her, hold against her, her failure to make an immediate outcry. The fact that the seasoned defense attorney did not object itself is a suggestion that there's not clear and obvious error, the kind of clear and obvious error that's required under plain error. Keeping in mind that the plain error rule exists to protect the defendant's rights, where a trial error is simply so clear and obvious that the trial judge should have known to step in and make an immediate outcry. So these questions were open-ended, talking about the questions, they're open-ended questions, they never suggested an answer, they were not leading, did not imply that any of the reasons that the veneer persons offered were correct or were pleasing to the prosecutor. They were simply looking for bias against the complainant, against her testimony. I mean, perhaps the best way to illustrate this is to look at cases in which the prosecutor's questioning was held to be accurate. And you can see it simply didn't arise to that level. So in People v. Boston, questions pre-educated in doctrine of the jurors, and talked about the theory of the case. A very leading question, so in Boston, for example, they would ask questions, and I'm paraphrasing here, but they'd say, wouldn't you agree, can't you all agree that even though a victim had a order of protection, she would have to consent to a trial? To a sex act, things along that nature, the planting the answer, very leading questions, and essentially pre-educating the jury and basically trying the factual issues. Similarly, in Boston, People v. Boston, they asked whether the jurors believed that a person could plan and carry out a murder, even if the victim was a family member, as a solution to problems within the relationship. That kind of indoctrinating did not occur here, even the appellate court so held. Here's the prosecutor's question, just simply didn't have that effect, again, they were open, non-leading, didn't imply that any of the reasons offered by the veneer persons were valid, or even that the victim would testify to any of those reasons for a delayed reporting. As Justice Tice mentioned earlier, the appellate court held that the evidence was not closely balanced. The defendant did not testify, the complainant testified, she gave a credible, detailed account, was essentially unimpeached, and he certainly cannot prevail, even if there is a clear and obvious error, he cannot prevail under the first prong of the plain error test. Nor is this structural error, the prosecutor's question is that structural error that would warrant relief under the second prong of plain error. He simply fails to show that he was tried before a biased jury. He also fails to show that the defendant was not implicated, that they understood and accepted the Rule 431B, the ZEHR principles. They were all instructed in assessing the veracity of the complainant's testimony. She explained why she did not report, and they're presumed to have followed their instructions in assessing the credibility of her explanation for her delayed reporting. And similarly, for the same reasons, or many of the same reasons, the defendant's Strickland claim fails, because counsel could not have been deficient for failing to object to this line of questioning when it was not error, and even if counsel were somehow deficient for failing to object, the defendant cannot show that he was prejudiced for many of the same reasons. A.A., the complainant gave an unimpeached account of the offense, she explained why she did not report immediately, the jury is presumed to have assessed the credibility of her defense. She did not report her testimony in accordance with the jury instructions, and counsel argued in closing argument that her delay in reporting should be considered as a basis for acquitting the client. Under these circumstances, the defendant just cannot demonstrate a denial of the right to effective assistance of counsel, and this Court should not excuse this forfeiture of his jury selection claim. Thank you, Ms. Saunders. Counsel for the appealee. May it please the Court, counsel. My name is Colleen Morgan, I'm from the Office of the State Appellate Defender, and I represent Mr. Thomas Reinhart. In response to one of the questions that this Court has asked, this Court doesn't have to make decisions about policy or look into the legislative debates in this case, because contrary to the State's argument, the plain language of the MSR statute is clear. It's not ambiguous. The statute doesn't use the terms indefinite or indeterminate. The legislature could have stated that the MSR term for sex offenders would be indeterminate, or it could have stated that every sex offender would be subject to a life term that's only shortened by the PRB, but it didn't. If the legislator wanted to make such a radical departure from our system of determinate sentencing, it would have clearly expressed that intent in the plain language of the statute. Instead, the statute is drafted in a fashion to require a determinate sentence and a determinate term of MSR, and that language is similar to many other sentencing statutes in the criminal code, such as the firearm enhancement statute. The MSR statute is drafted in exactly the same manner as the firearm enhancement statute. For example, with MSR, trial court is required to impose either a one, two, or three-year term of MSR, depending on the class of the offense, or it's required to impose a term of MSR between three years in life for sex offenders. Now, the same language is mirrored in the firearm enhancement statute, where the court is required to add a 15-year sentence for possession of a gun, a 20-year sentence for offenders who personally discharge a weapon. But the firearm enhancement statute also requires that when an offender discharges a weapon and causes bodily harm or death, the trial court shall add to the prison sentence 25 years or up to a term of natural life. Now, in both statutes with MSR and the firearm enhancement statute, the trial court is required to add an additional term to the prison sentence. And in both statutes, they provide for both set terms and for the trial court to exercise its discretion from within a range of terms. This court's never held that the firearm enhancement statute requires indeterminate sentencing on the basis of that language. Ms. Morgan, however, what was the purpose of adding Section 3-2A.3.5 if the legislature intended to keep the determinate MSR terms for sex offenders? Ms. Morgan, that's the provision that requires that they petition. They can make a petition off, I assume. Sorry, 3.5 is, oh. Well, again, that's 3.5. Well, that's just reflective. It's the same as Section 3. It requires that the PRB can establish conditions of MSR and impose sanctions. The whole scheme that's been created by this public act is just an addition or a little bit of a change to the scheme that already existed. PRB has always had the authority to impose conditions and sanctions for MSR. They've always had the ability to release offenders early. They've always had the ability to determine when a violation would require revocation of MSR. And all of the new MSR provisions that have been introduced, all of the new amendments in the public act, just tweak everything that's already been there so that the PRB can enforce this with relation to the extended terms, which are going to be running longer than three years. They couldn't be up to life. So the statute allows for the PRB to properly do its duty and enforce the terms of MSR, but within an extended term. So it's providing for review and after-service services, but within a certain amount of time instead of just one, two, or three years. It's allowing that when a defendant needs to be re-confined, they don't go in for the entire amount of their MSR sentence, where it would have been only one, two, or three years. But now it can only be two years. Are there any risks of having indeterminate MSR terms for sex offenders? There would be because, well, I think part of the risk that a sex offender is violated and sent back in and left in prison forever, a little bit of that is ameliorated by the fact that the statute does provide for this periodic review and for only certain amounts of incarceration. So I don't, I think the way that they've worded the statute and the way they've provided for things that if someone got an extended term, at least, like you said, an indeterminate term, excuse me, not an extended term, I apologize. But no, as far as indeterminate, I mean, an offender would never know when he would be able to be out. DOC would never know how long to give him to provide for his care. The cost would be up there, how long, and the method by which PRB is going to monitor him for how long they don't know who makes that ultimate determination. I think a lot of that's up in the air when you say that they're allowed to make an indeterminate sentence. And it comes back to the fact that we don't have indeterminate sentences in Illinois. How do you respond to the, what I understand the state's argument to be, that for the other, where there are fixed terms of MSR, one, two, or three years, and the trial court fails to do anything, those are automatically assessed. And I'm not sure that that's the case. And the language of 5-8-1D4 seems to be similar, that the mandatory supervised release term shall be arranged, it says here. And that should then be automatically imposed. Is there a difference in the language? Or is it improper for the fixed term of MSR to be imposed if the trial court has admonished the defendant about it but hasn't mentioned it at sentencing? I think you raised three different issues. One is about the, that MSR applies just by operation of law, what the language range of sentences means, and also something to do with admonishing. Originally, by operation of law, the trial court is required to add a lot of mandatory sentences. And that doesn't mean that it's deprived of its power to be able to fashion a sentence. I mean, for every class X offender, the trial court is precluded from giving probation. He has to sentence someone to a prison sentence. But he still has the discretion to give a sentence between six and 30 years. Same thing goes for like street value fines. And some controlled substance offenses, they're required, but the court still has discretion to determine how much that is. Just because a trial court has to impose a sentence, with respect to the question of admonishments, if they're properly admonished, obviously that's a different issue. But if they're properly admonished, but then at sentencing the trial court doesn't mention the imposition of two years of MSR, for example, but it's still imposed, what's the difference if the trial court just says you're going to get MSR as the statute provides? In another case or in this one? Well, if the statute provides that it's going to be a set term, then the defendant will know or should know that if he's convicted of a class I offense, he's going to get a class II sentence. But if it's a sex offender and he's not told at the time of sentencing what his sentence will be, because it could be three years or it could be up to natural life, then if it hasn't been imposed, then it has to get questioned when it comes up in the terms of whether there has been a guilty plea. And in that case, if a defendant's told you can get a term from three years to life and then it's sent back later for the trial court to impose a sentence, the defendant does, he's still getting the benefit of his guilty plea because he's getting what he's been told is going to be a term in between that range. But this court also had a question regarding the language in the statute and the range. The Schneider court misinterpreted the language of the statute when it held that the statute was ambiguous. And that's because it looked at the term range and used it as a noun and believed that it meant that a trial court can impose a range or an indeterminate sentence on a defendant. But what the statute actually says is that range or fall within certain points between the maximum and minimum. So the language, when you read it plainly, says not that the court can give an indeterminate sentence, but that it will give a term of MSR that ranges between. Shall range between. But it's not a, it's not it shall be a range. It shall range. So it's used more as a verb, an adjective, intransitive, but it's not a noun. It's not you're imposing a range of sentences. Defendants will have a term of MSR that shall range or be between this maximum and minimum. That's the plain language of the statute. And that's why the Schneider court was in error. It didn't look at the plain language of the statute. It went beyond that. It started looking at all of the other amendments. It was looking at everything else other than just what the statute says. If we say that, if we say that you're right, that the judge has to impose the term, won't that, doesn't that just encourage a judge in every sex offense case to say you get your sentence and you get a lifetime, you get lifetime MSR? Theoretically. That's the range. A judge could do that, but we base our justice system on the idea that the judge is going to impose the sentence that's proper for each particular defendant under the circumstances of each offense. And in light of his background and his potential for rehabilitation and the danger to the public and all these sorts of things. I mean, if we don't think the judge is going to consider the proper factors with regard to MSR, then how can we say he's considering the proper factors with regard to sentencing? And the thing is the judge is in the best place at the time of sentencing to fashion the sentence and to also fashion the term of MSR. I mean, MSR is a form of punishment. It's conditional liberty. So if the trial court is the only one who has the power and the authority to deprive a defendant of his liberty, then it should be the only one who has the power and the authority to deprive him of his liberty. But in an ordinary circumstance, if you have a class one felony, the judge doesn't have any discretion. You give the defendant three years, you say it's three years of MSR. Exactly. No matter what you think about it. The same way you would throw on 15 years to someone who had a gun for a firearm enhancement. And let the experts decide later on if he's made progress or she's made progress so that they can be released safe. And for the highest risk sex offenders, which the statute contemplates would be getting the life statutes, that would be appropriate. So if the trial court is looking at a particular defendant and seeing their background or realizing they've had a sex offender evaluation or something that presents them at a risk, that would be an appropriate sentence for them to say at the time you know, the protection of the public is paramount here. I don't think he can be rehabilitated. He has a lot of mental health issues. And I think he should have a lifetime sentence. If the trial court is making that decision based on the facts and circumstances of the case, that would be proper. But at the same time, the court would have the option to give him 10 years or 4 years or 12 years or anything within that range. If he feels that would be a better MSR term or a better opportunity for the defendant to do something else. To do what MSR is for. To become acclimated to society and better fit in with the public and rehabilitate himself. In regards to the voir dire question, the state argues that there really wasn't any harm in the type of question that was asked here because it didn't indoctrinate the jury. But what the questions actually did is they pre-educated the jury to do what they thought was appropriate towards the state's case. Was there a specific question about the specifics in the case? There wasn't as far as you mean the facts of the case. No. What's worse is that because this happened before there were any facts presented at the case, we had no idea of FAA, what her motivations would have been when the prosecutor was asking the jurors, why do you think someone would delay in reporting? Why would someone who's been sexually assaulted or why would a rape victim not come forward? Instead of letting them infer why AA did what she did, he was putting them in the victim's shoes. So they were taking the facts of their own lives and their own emotions and their own feelings and their own biases and coming up with answers in that. So that was even more harmful than if the state had, if the state really wanted to find out what the facts of the case were. They could have asked, are you biased against people who don't immediately report allegations of sexual abuse? They could have got a yes or no question and it would have been over. But instead he was asking all of these questions that required the jury to sort through their own emotions and feelings and empathize with the victim, even though they'd not even seen her testimony. You can kind of see what the opposite effect of that would have been if the defense had asked a question relating to, as specifically to its theory of the case, as the prosecutor asked relating to their theory of this case. They would have been able to ask questions like, can you think of a reason why a rape victim would lie? Can you think of a reason why someone who's been assaulted would make up allegations? That's something that would never be allowed. But that's the converse. That's how important this question was to the case of defense. The defense's only way of kind of going against the state's case here was to establish that AA wasn't a credible witness. The state had no forensic evidence. They had no corroboration at all. All they had was AA's word that the offense took place. So the defense, the only thing that they could do was attack her credibility. And her credibility was the one thing that the state bolstered by asking the jurors to sympathize with her, even before they were seated as jurors. So if there's no other questions, Mr. Reinhart asked that this court reverse the appellate court's finding in that the plaintiff, if there was plain error, or in the alternative, affirm the decision regarding the MSR and the remand for the trial court to impose a specific term of MSR. Thank you, Ms. Morgan. Yes, just briefly, there are a couple of points I'd like to make. Plainly, subsection D4 does not unambiguously provide that a judge must select a determinate MSR term within the three-year life range, or I submit we would not be here today. Again, it simply provides for an indeterminate MSR term and commits to the PRB the authority and discretion to discharge the offender from MSR following that three-year minimum term, given this periodic, again, twice-yearly progress report. The MSR arises as a matter of law in every case, and defendant here is asking for the departure. It's not a radical departure at all to have this indeterminate MSR term arise by operation of law. I wanted to touch on something that Justice Garmon, I believe, was getting at. There really would be no purpose of a determinate MSR term when it's the PRB who has this authority and has the information, again, these twice-yearly reports on the offender's progress in sex offender treatment and participation. There'd be no purpose to the court setting a determinate MSR term. When the PRB, in the end, has the authority to terminate or discharge that MSR term. And really there's no precedent for a judge to select an MSR term from within that range. Again, keeping in mind that it's the PRB and not the court that is getting these periodic reports on the defendant's progress in sex offender treatment. Finally, I wanted to point out that although defendant argues that the prosecutor's questioning during voir dire, the questions about whether they could think of a reason a sexual assault victim might not report, while defendants argued that it's error, defendant failed to argue, much less demonstrate, that the evidence was closely balanced or that this was structural error, and therefore this court should enforce the forfeiture of that issue. If this court has no further questions, we would ask that this court reverse that part of the fourth district judgment, requiring the, remanding for the trial judge to impose a definite MSR term from within that range. But we otherwise ask that this court affirm the appellate court's judgment. Thank you. Thank you.